STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN SMITH, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ELIZABETH SMITH, ALSO KNOWN AS ELSIE SMITH, DEFENDANT-APPELLANT.

Argued April 16, 1956—Decided June 13, 1956.

*Mr. David M. Perskie* argued the cause for appellants (*Messrs. Perskie & Perskie*, attorneys).

*Mr. David D. Furman,* Deputy Attorney-General, argued the cause for the State (*Mr. Grover C. Richman, Jr.,* Attorney-General, on the brief).

The opinion of the court was delivered by

HEHER, J. The defendants, John Smith and Elizabeth Smith, his wife, were convicted by a jury on indictments, each of six counts, severally charging, *mutatis mutandis* (counts 1, 3, 4 and 6) that they voted "fraudulently" at the primary and general elections held in 1953 and 1954 in the Borough of Avalon, in the County of Cape May, New Jersey, "then and there knowing or having reason to believe himself not entitled to so vote" and that he was "not a legal voter"

in the election district in which the vote was cast, and "then and there knowing or having reason to believe that he had not resided in the State of New Jersey one year and in the County of Cape May five months next before" the election, contrary to *Article* II, *paragraph* 3 of the 1947 *State Constitution* and *R. S.* 19:4–1 and *R. S.* 19:34–11; and also (counts 2 and 5) that he "did offer to vote and did vote, without being entitled to vote" at the primary elections held in the given years in the Borough of Avalon, "then and there knowing or having reason to believe himself not entitled to so vote" and that he "was not a legal voter" in the district in which the vote was cast, and did not have the stated constitutional qualification of residence, contrary to the cited Article of the Constitution and *R. S.* 19:4–1 and *R. S.* 19:34–22.

Counts 1, 3, 4 and 6 are described by counsel as "relating to fraudulent voting," and counts 2 and 5, to "illegal voting." Each defendant was fined $500, without more. The fine was not apportioned as to the several counts, which counsel deems a requirement on the authority of *State v. Kaufman,* 18 *N. J.* 75 (1955). The appeal is pressed only as to the judgments of conviction on counts 1, 3, 4 and 6 of each indictment, charging "fraudulent voting," a misdemeanor, we are told, "carrying a penalty of up to three years imprisonment or a fine up to $1,000 or both, *R. S.* 19:34–11; *R. S.* 2A:85–7"; and it is said in argument that "Inasmuch as the maximum fine for a violation of *R. S.* 19:34–22, of which defendants were likewise found guilty on two counts, is $100, it is obvious that at least part of the fine—$300 for each defendant—was for a violation of the counts involving fraudulent, rather than illegal voting."

A pretrial motion to dismiss the indictments—counts 1, 3, 4 and 6 as not stating "facts sufficient to constitute an offense," and counts 2 and 5 as "multiplicitous"—was denied; and a like motion made at the close of the evidence and a motion to arrest judgment after verdict were also denied.

The cases are here by our certification of the accuseds' pending appeals to the Appellate Division.

The contention is that *R. S.* 19:34-11 denounces "fraudulent" voting, while *R. S.* 19:34-22 renders criminal the act of one voting at a primary election "knowing or having reason to believe himself not entitled to so vote," and "this whether fraudulent or not"; the one statute, *R. S.* 19:34-11, "bans fraudulent voting at any election," and the other, *R. S.* 19:34-22, "makes it illegal for one to vote at a primary knowing or having reason to believe he was not entitled to vote"; and "indictments for fraudulent voting under *R. S.* 19:34-11 cannot be sustained if," as is the case with the indictments here, "they predicate fraudulent voting on a person's voting *with reason to believe* he was not entitled to vote." In other words, it is insisted, "voting with 'reason to believe' is not voting fraudulently, nor is it voting with actual knowledge"; the distinction made is "between (1) voting fraudulently, (2) voting with 'knowledge,' and (3) voting with 'reason to believe' "; the "vice in counts 1, 3, 4 and 6 is that they allege that if a person votes when he merely has reason to believe himself not qualified to vote, he is guilty of fraudulent voting," while the "reason to believe" standard is applicable only to voting at primary elections under *R. S.* 19:34-22, and to convict under *R. S.* 19:34-11 "there must be fraud, not mere 'reason to believe'—there must be at the very least actual knowledge, not merely 'reason to believe,' " and the "jury was justified in finding guilt" under counts 1, 3, 4 and 6 "if they determined from the evidence, as well indeed they might have, that the defendants voted when they *should have known* they were not entitled to vote; the jury might well have determined from the evidence that the defendants *had reason to believe* themselves not qualified to vote."

And it is said that "Inasmuch as the two 'crimes' allegedly set forth in the indictments carry different penalties, the issues presented cannot be resolved merely by remanding the cause for resentencing"; if defendants' "position is legally sound, the convictions on counts 1, 3, 4 and 6 must be set aside in their entirety," citing *State v. Kaufman, supra; State v. Matarazza,* 93 *N. J. L.* 47 (*Sup. Ct.* 1919), affirmed

94 *N. J. L.* 263 (*E. & A.* 1920), and resentence on counts 2 and 5 will then be in order, offenses carrying a maximum fine of $100.

Insisting that the "statutes themselves distinguish between fraud, knowledge and reason to believe," it is nevertheless conceded that under *State v. Benny*, 20 *N. J.* 238 (1956), "fraudulent voting can be spelled out of voting with actual knowledge of one's inability to vote"; the contention is that "it is impossible to spell fraud out of voting with but 'reason to believe' one is not entitled to vote."

Yet is it not in essential quality the same thing where one casts a vote despite the conviction of disqualification founded in what he conceives to be good reason? Is it not the equivalent of the knowledge constituting fraud within the intendment of the statute? There is no conceivable distinction between the two when considered in the context of *R. S.* 19:34–11; and counsel suggests none save the difference in language and in the penalties prescribed, and the conception of fraud as "completely unjustifiable, intentional, deliberate and malevolently purposeful conduct," "concepts inherent in the term."

But what the particular enactment has in view is a fraud upon the Constitution and the implementing statutes prescribing electoral qualifications, *i. e.*, the casting of a ballot by an unqualified person knowing or having good reason to believe he was unqualified, convertible terms when used in this context. See *State v. Moore*, 27 *N. J. L.* 105 (*Sup. Ct.* 1858), holding that a "person who votes, knowing that he is disqualified, acts, of necessity, in fraud of the Act." And is this not equally so as to one who votes having "reason to believe" he is disqualified? Indeed, the term is used interchangeably with "knowledge" in the cited provision relating to primary elections, *R. S.* 19:34–22, classifying as a misdemeanor "false" voting by a person "knowing or having reason to believe himself not entitled to vote." It cannot be that the Legislature intended to denounce as criminal the act of voting in a primary election by one "having reason to believe" himself ineligible, but not when the vote is cast

at a general election. See, in this regard, *R. S.* 19:23–46; 19:34–20, *N. J. S. A.*

The effort at differentiation is a futile exercise in semantics, not at all conducive to contextual exegesis. Guilt is personal; the determinant here is the reasoned conviction of the mind of the accused, a subjective inquiry, not a theoretical, vicarious belief of the hypothetical reasonable man, as the State and the accused would have it, akin to the standard governing reparation in damages for the civil wrong occasioned by negligence. There would in that state of mind be "fraudulent" voting within the concept of *R. S.* 19:34–11. Illegal voting in defiance of such personal conviction would constitute a fraud upon the statute. The exposition *contra* would be arbitrary and unreal, violative of the reason and spirit of the statutory terms, completely at variance with the term "fraud" when related to voting qualifications. Although penal statutes are to be strictly read, we must avoid the realm of metaphysics in the exercise of the interpretive process. See *United States v. Tobin*, 149 *F. 2d* 534 (*7 Cir.* 1945); *United States v. Max, 156 F 2d* 13 (*3 Cir.* 1946).

The words of the indictment are to be given their ordinary usage, unless differently defined by law. "Reason" commonly suggests the "due exercise of the reasoning faculty; accordance with, or that which is accordant with and ratified by, the mind rightly exercised; right thinking": and "belief" is conviction of the truth and validity of the given proposition, or of the existence of a fact. *Webster's New International Dictionary* (*2d ed.*). "Reason" is rationalized understanding. A person has knowledge of a fact if he has no substantial doubt as to its existence. *Restatement, Restitution, section* 10*d.* "Knowledge" is nothing more than a man's firm belief; the difference is ordinarily merely in the degree of certainty, "to be judged of by the court, when addressed to the court; by the jury, when addressed to the jury"; "With regard to things which make not a very deep impression on the memory, it may be called 'belief.'" *Hatch v. Carpenter, 75 Mass.* 271 (*Sup. Jud. Ct.* 1857), Shaw, C. J. "Knowledge" within the meaning of law, it has been

said, may consist of credible information on material facts and circumstances sufficient in content and quality to generate a reasonable belief. *Sackett v. Farmers' State Bank of Boone,* 209 *Iowa* 487, 228 *N. W.* 51 (*Sup. Ct.* 1929).

In *State v. Benny, supra,* Chief Justice Vanderbilt said that "Knowledge of the fact" that the accused "was not entitled to vote as he did is unquestionably a necessary element of each of the offenses" there charged under *R. S.* 19:34–11 and 19:34–22, *N. J. S. A.,* which may be inferred from the defendant's conduct and the circumstances of the case, bearing in mind the "knowledge that all persons are presumed to have of the law, its existence and effect"; and thus he equated the two concepts in relation to the particular subject.

Such, indeed, was the interpretation given these indictments by Judge Leap. The jury were instructed that actual knowledge of electoral disqualification was requisite to conviction: The burden lay upon the State to prove "beyond a reasonable doubt facts from which the inference was reasonable that the defendants had actual knowledge that they were not qualified to vote in Avalon." And this standard of guilt was emphasized in other passages of the charge. There is no complaint on this score. It is the indictments themselves that are under attack for legal insufficiency.

Affirmed.

WACHENFELD, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, JACOBS and BRENNAN—5.

*For reversal*—Justice OLIPHANT—1.